IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WAYNE KRZYSIAK and MICHAEL LaCOUR, | ) ) ) | |
| | ) | No. _____ |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| | ) | |
| NAVISTAR INTERNATIONAL CORPORATION; NAVISTAR, INC.; INDIANAPOLIS CASTING CORPORATION; NAVISTAR GLOBAL OPERATIONS COMPANY; INTERNATIONAL TRUCK AND ENGINE OVERSEAS CORPORATION; and NAVISTAR COMPONENTS HOLDINGS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Introduction and Nature of Action

1.       Plaintiffs Wayne Krzysiak and Michael LaCour are retirees of Navistar, Inc. (the "Company") or its related entities and are participants in the Navistar, Inc. Retiree Health Benefit and Life Insurance Plan (the "Plan").  Through the Plan, they receive retiree health benefits, including prescription drug benefits.

2.       Plaintiffs, like other Plan participants, are required to pay a portion of the annual premiums for the health benefits and anticipated prescription drug costs (the "Participant Contribution").[1]

---

[1] A Supplemental Benefit Trust established under the Plan sometimes expends its assets to offset in part the Participant Contribution.

3.     The Company, along with its parent, Navistar International Corporation ("Parent"), Navistar Financial Corporation ("NFC"); Indianapolis Casting Corporation ("ICC"); Navistar Global Operations Company (f/k/a Navistar International Export Corporation) ("NGOC"); International Truck and Engine Overseas Corporation (f/k/a Navistar International Overseas Corporation) ("ITEOC"); and Navistar Components Holdings, LLC ("NCH") or their predecessors are, or at times relevant to this Complaint were, deemed "Employers" under the Plan.

4.     The Employers are required by the Plan terms to pay the annual contribution, pre-funding contribution, and any additional amounts necessary to pay their portion of the actual benefit payments and administrative costs (the "Employer Contribution").

5.     The Participant Contribution and the Employer Contribution are paid into the Navistar International Transportation Corp. Retiree Health Benefit Trust, a separate entity from the Employers that is tax exempt under Internal Revenue Code section 501(c)(9) as a Voluntary Employee Benefit Association (the "VEBA Trust").  The VEBA Trust then pays for the participants' health benefits, including prescription drug costs.

6.     The payments for prescription drugs for Medicare-eligible participants, consisting of VEBA Trust assets contributed by both the Plan participants and the Employers, generate certain subsidies and rebates under the Medicare Part D program or amounts otherwise intended to represent those subsidies and rebates (the "Subsidies").

7.     The Company, acting in its capacity as the Plan Administrator and Named Fiduciary of the Plan, together with other Employers under the Plan, has appropriated the entire amount of the Subsidies and has refused to share any portion thereof with the Plan's participants—even though the VEBA Trust, and not the Employers, paid for the drugs, and the Participant

Contributions to the VEBA Trust paid a portion of the cost of the drugs that generated the Subsidies.

8.     Under ordinary notions of property rights, the VEBA Trust has a beneficial interest in the Subsidies.  Once distributed, the Subsidies constitute Plan assets under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1101, *et seq.* ("ERISA"), because the costs of the pharmacy benefit manager's administrative services and the costs of the prescription drugs that gave rise to the Subsidies were paid entirely out of VEBA Trust assets.  *See* DOL Adv. Op. 2005-08A (May 11, 2005).  Additionally, the portion of the Subsidies that is attributable to Participant Contributions constitutes Plan assets because the Participant Contributions paid for that portion of the Subsidies.  *See id.*

9.     These and related acts and practices by Defendants violate the terms of the Plan and multiple provisions of ERISA.  Plaintiffs bring this action on behalf of the Plan to remedy those violations and enjoin further such violations.

## Jurisdiction and Venue

10.     The Plan is an employee welfare benefit plan within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1).

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1331 and ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Defendants, including but not limited to the Parent and the Company, maintain business operations or otherwise may be found within the State of Ohio and within the judicial district for the Southern District of Ohio.

13.     Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.  All Defendants are residents of the United States and/or subject to service in the United States, and this Court therefore has personal jurisdiction over them.

14.     Venue is proper in this Court pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. section 1391, because Defendants, including but not limited to Parent and Company, reside or may be found in this District.

The Parties

15.     Plaintiffs Wayne Krzysiak and Michael LaCour are participants in the Plan within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7).  As such, Plaintiffs have standing to bring this action pursuant to ERISA section 502(a)(2) and 502(a)(3), 29 U.S.C. § 1132(a)(2), (3).

16.     Defendant Navistar International Corporation is a Delaware corporation with a corporate headquarters in Illinois.  Parent is among the "Employers" as that term is defined in the Plan.

17.     Defendant Navistar, Inc. is a Delaware corporation with a corporate headquarters in Illinois.  The Company is among the "Employers" as that term is defined in the Plan.

18.     Defendant Navistar Financial Corporation is a Delaware corporation with a corporate headquarters in Illinois.  NFC is among the "Employers" as that term is defined in the Plan.

19.     Defendant Indianapolis Casting Corporation is a Delaware corporation with a corporate headquarters in Illinois.  ICC is among the "Employers" as that term is defined in the Plan.

20.     Defendant Navistar Global Operations Company is a Delaware corporation with a corporate headquarters in Illinois.  NGOC is among the "Employers" as that term is defined in the Plan.

21.     Defendant International Truck and Engine Overseas Corporation is a Delaware corporation headquartered in Dubai, UAE, with a registered agent in Delaware for service of process.  ITEOC is among the "Employers" as that term is defined in the Plan.

22.     Defendant Navistar Components Holdings, LLC is a Delaware limited liability company with a corporate headquarters in Illinois.  Upon information and belief, NCH is a successor to Pure Power Technologies, LLC ("PPT"), a Delaware limited liability company with a corporate headquarters in South Carolina.  At times relevant to this Complaint, NCH and/or PPT is or was among the "Employers" as that term is defined in the Plan.

23.     The Company is the Plan Administrator and Named Fiduciary of the Plan and, as such, functions as a Plan "fiduciary" within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).

<u>Background</u>

24.     The Company established and maintains the Plan (formerly known as the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan), ERISA Plan number 584, EIN 36-1264810.

25.     The Plan is a single ERISA welfare plan consisting of three benefit programs:  the Navistar Inc. Retiree Health Benefit Program (the "Base Plan"), the Navistar International Transportation Corp. Retiree Life Insurance Program (the "Life Insurance Program"), and the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (the

"Supplemental Benefit Program"). The Plan terms require that the Plan be implemented through the VEBA Trust. Base Plan § 1.4.

26. The Base Plan provides health, medical, and prescription drug benefits for eligible Plan participants and their beneficiaries.

27. Section 3.9 of the Base Plan provides in relevant part that Parent and the Company "jointly and severally, unconditionally and irrevocably guarantee the provision of benefits under and in accordance with the terms of the [Base Plan]."

28. Article III of the Base Plan provides for both the Plan's "Contributing Participants" and the "Employers" defined in the Agreement to make periodic contributions to the Plan. In this way, "[t]he Employers and the Contributing Participants shall share the total cost of the Health Benefit Program [the Base Plan]." Base Plan § 3.2.

29. The Base Plan includes two benefit programs covering different categories of Participants:

> "Plan 1" refers to the Base Plan's benefit program for Contributing Participants who are not eligible for Medicare.

> "Plan 2" refers to the Base Plan's benefit program for Medicare-eligible Participants.

30. Plaintiffs are covered by Plan 2.

<u>Prescription Drug Benefits and Medicare Part D</u>

31. At the time the Plan was established, the federal Medicare programs did not include a prescription drug benefit. Instead, Plan participants' drug benefits were provided directly from the Base Plan.

32. The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") established Medicare Part D to provide prescription drug benefits through Medicare.

Part D is administered by the Centers for Medicare and Medicaid Services ("CMS"), an entity of the federal government.

33.     Effective July 1, 2010, the Company unilaterally eliminated the Base Plan's prescription drug benefit for the Plan's Medicare-eligible participants covered by Plan 2 and forced them to participate in Medicare Part D, a requirement that continues to this day.

34.     For the period from July 2010 through December 2011, the Company caused the VEBA Trust to pay fixed monthly premiums for a fully-insured Series 800 Medicare Part D Plan operating under an Employee Group Waiver Program (the "Fully-Insured PDP", generally a "PDP"), which was underwritten and administered by SilverScript Insurance Company.[2]  CMS and the pharmaceutical manufacturers who participated in the Fully-Insured PDP paid certain Subsidies back to CVS/Caremark.  As relevant here, those Subsidies are:

(i)     A Medicare Part D base subsidy paid by CMS;
(ii)    Low-income subsidies paid by CMS;
(iii)   Federal reinsurance paid by CMS; and
(iv)    Coverage-gap discounts by the pharmaceutical manufacturers.

35.     The Medicare Part D base subsidy is one way in which the federal government subsidizes the cost of prescription drug benefits for Medicare-eligible participants.  The base subsidy is paid by CMS to every PDP in amounts based on such factors as the number of plan participants, the risk level of the participants, and individual plan costs.

36.     Low-income subsidies are subsidies paid monthly by CMS to the PDP for the purpose of reducing premiums for low-income plan participants.

37.     Federal reinsurance subsidies operate as a sort of stop-loss coverage provided by the federal government.  They are amounts paid by CMS to reimburse the PDP for costs above a certain threshold.

---

[2] Upon information and belief, SilverScript was subsequently acquired by CVS/Caremark.

38.     Coverage-gap discounts provided by the drug manufacturers are amounts provided by the drug manufacturers to the PDP to reduce the amounts paid by Medicare recipients for portions of their costs that are not covered by Medicare.  The coverage-gap discount was created by the Patient Protection and Affordable Care Act of 2010 when it amended MMA.

39.     Upon information and belief, while the Fully-Insured PDP was in place, these Subsidies were paid to, and retained by, CVS/Caremark.  However, they were then used by CVS/Caremark to reduce the cost of the insurance premiums it charged the Plan to provide the drug benefit.

40.     Effective January 2012, the Company, acting in its fiduciary capacity as the Plan Administrator, amended the contract with CVS/Caremark, changing from the Fully-Insured PDP to a self-funded PDP.  CVS/Caremark continued to provide claims administration services, but the VEBA Trust assumed the liability for paying the underlying prescription drug claims (the "Self-Funded PDP").  This Self-Funded PDP has remained in effect for all periods from and after January 2012, subject to minor amendments not material to this action.

41.     As under the prior, fully-insured arrangement, CMS and the pharmaceutical manufacturers continued under the Self-Funded PDP contract to provide the Subsidies described above.  Unlike under the prior Fully-Insured PDP, however, those Subsidies no longer were paid to and retained by CVS/Caremark, and then used to lower the premiums the VEBA Trust paid for the insurance.

42.     Instead—despite the fact that the Subsidies were generated by payments from the VEBA Trust, not by payments from Employers' corporate assets, and that contributions to the VEBA Trust were made not only by the Employers but also by the Plan participants and the Supplemental Benefit Trust—Defendants have received approximately $105,000,000 in Subsidies

8

from January 2012 through April 2015 from CVS/Caremark and have used them exclusively for their own corporate benefit rather than for the benefit of Plan participants and beneficiaries.  To the extent the Subsides have been returned to the VEBA Trust, the Company has failed to allocate those funds in a manner that allows the participants to receive or benefit from their fair share of the Subsidies.  Instead, on information and belief, Defendants are using the Participants' share of the Subsidies to reduce their own obligation to make contributions to the VEBA Trust.

43.     Based on information provided by the Company for the years since the Self-Funded PDP began in 2012 through the most recent month for which data is available (April 2015), Plaintiffs have determined that the Participants' fair share of the Subsidies that was misappropriated by Defendants is approximately $26 million.

## COUNT I – BREACH OF ERISA FIDUCIARY DUTY

44.     Paragraphs 1 through 43 are incorporated herein by reference.

45.     Plaintiffs bring this Count against the Company under ERISA section 502(a)(2) for appropriate relief under section 409 of ERISA for breach of fiduciary duty.

46.     The Company is the Plan Administrator and Named Fiduciary of the Plan and, as such, functions as a "fiduciary" with respect to the Plan as that term is defined under section 3(21) of ERISA, 29 U.S.C. § 1002(21).

47.     Assets of the Plan may never inure to the benefit of the Employers, and the VEBA Trust's assets may only be expended for the exclusive purposes of providing benefits to participants and beneficiaries of the Plan and defraying reasonable expenses of administering the Plan, as required by section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1).

48.     As a fiduciary of the Plan, the Company is required by section 404(a)(1)(A), (B), and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), and (D), to discharge its duties with respect to

the Plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose

of providing benefits to the participants and beneficiaries of the Plan; (B) with the care, skill,

prudence and diligence under the circumstances then prevailing that a prudent person acting in like

capacity and familiar with such matters would use; and (D) in accordance with the documents and

instruments governing the Plan insofar as those documents and instruments are consistent with

ERISA.

49.     In addition, section 9.1 of the Base Plan provides:

No part of the corpus or income of the Health Benefit Trust shall be used for, or
diverted to, any purposes other than for the exclusive benefit of persons who are or
may become entitled to benefits under the Health Benefit Program or the Life
Insurance Program and for defraying reasonable expenses of administering such
programs.

50.     Section 9.2 of the Base Plan provides:

No part of the corpus or income of the Health Benefit Trust shall inure to the benefit
of Parent, the Company or any other Employer.  All fiduciaries hereunder shall
discharge their duties solely in the interests of Participants for the exclusive purpose
of providing benefits and defraying reasonable expenses of plan administration.

51.     By keeping the full of amount of Subsidies for itself and/or the other Employers

and failing to return or credit the participants with their appropriate share, the Company has

allowed VEBA Trust assets to inure to the Employers and has failed to act solely in the interest of

the Plan's participants and beneficiaries and for the exclusive purpose of providing them, in

violation of ERISA sections 403(c)(1) and 404(a)(1)(A); has failed to act with the care, skill,

prudence, and diligence a prudent person would have used under the circumstances, in violation

of ERISA section 404(a)(1)(B), and has failed to act in accordance with the documents and

instruments governing the Plan, including but not limited to sections 9.1 and 9.2 of the Base Plan,

in violation of ERISA section 404(a)(1)(D).

52.     By the breaches of fiduciary duty specified in this Count, the Company has caused losses to the Plan.  The Company is liable to make good to the Plan the losses to the Plan resulting from each of these breaches, and to restore to the VEBA Trust any profits made through its use of VEBA Trust assets.

## COUNT II – EQUITABLE RELIEF UNDER ERISA

53.     Paragraphs 1 through 52 are incorporated herein by reference.

54.     Plaintiffs bring this Count against all Defendants under ERISA section 502(a)(3) to enjoin acts and practices that violate ERISA and the terms of the Plan, and to obtain other appropriate equitable relief to redress such violations and to enforce the provisions of ERISA and the terms of the Plan.

55.     As set forth above and below, Defendants' refusal to return to Plan participants their fair share of the Subsidies violates ERISA and the terms of the Plan, including but not limited to ERISA's and the Plan's prohibitions on assets of the Plan inuring to the benefit of Employers. By this Count, Plaintiffs seek an injunction ordering Defendants to cease their violative acts and comply with the terms of ERISA and the Plan, and such other equitable relief as this Court deems appropriate to redress such violations.

## COUNT III – TRANSACTIONS PROHIBITED BY ERISA 406(a)

56.     Paragraphs 1 through 55 are incorporated herein by reference.

57.     Plaintiffs bring this Count against all Defendants because Defendants have engaged in transactions prohibited by ERISA, as set forth below.

58.     The Company is the Plan Administrator and Named Fiduciary of the Plan and, as such, functions as a "fiduciary" with respect to the Plan as that term is defined under section 3(21) of ERISA, 29 U.S.C. § 1002(21).

59. Each of the Employers, including Parent, is a "party in interest" with respect to the Plan, as defined under section 3(9) of ERISA, 29 U.S.C. § 1002(9), because it is either an employer of employees covered under the Plan or an owner or subsidiary of such an employer and, in the case of the Company, because it is a fiduciary of the Plan.

60. Section 406(a)(1) of ERISA generally prohibits a fiduciary with respect to a plan from causing a plan to engage in a transaction if the fiduciary knows or should know that such transaction constitutes a direct or indirect . . . (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. 29 U.S.C. § 1106(a)(1)(D).

61. To the extent the Company kept the Subsidies or gave them to any other Employer, the Company, a fiduciary with respect to the Plan, transferred to a party in interest the assets of the Plan, in violation of section 406(a)(1) of ERISA. To the extent the Company used the participants' share of the Subsidies to reduce its or any other Employer's obligation to contribute under the Plan, the Company, a fiduciary with respect to the Plan, used Plan assets for the benefit of itself, Parent, and other party-in-interest Employers, in violation of section 406(a)(1) of ERISA.

62. No exemption applies to the prohibited transactions described herein.

63. The Company knew or should have known that such acts constituted prohibited transactions under ERISA.

64. The Employers, all parties in interest to the Plan, knowingly participated in the Company's prohibited transactions.

## COUNT IV – TRANSACTIONS PROHIBITED BY ERISA SECTION 406(b)

65. Paragraphs 1 through 64 are incorporated herein by reference.

66. Plaintiffs bring this Count against the Company because the Company has engaged in transactions prohibited by ERISA, as set forth below.

12

67.     The Company is the Plan Administrator and Named Fiduciary of the Plan and, as such, functions as a "fiduciary" with respect to the Plan as that term is defined under section 3(21) of ERISA, 29 U.S.C. § 1002(21).

68.     Section 406(b)(1) of ERISA provides that a fiduciary with respect to a plan shall not deal with the assets of the plan in its own interest or for its own account.  29 U.S.C. § 1106(b)(1).

69.     The Company, a fiduciary with respect to the Plan, dealt with the assets of the Plan in its own interest by using the Subsidies to satisfy its and the other Employers' contribution obligations and/or by retaining the participants' share of the Subsidies for its own interest and in its own account, in violation of section 406(b)(1) of ERISA.

70.     No exemption applies to the prohibited transactions described herein.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants, jointly and severally, on all claims as specified above and respectfully request that the Court award the following relief:

(A)     Declare that the failure to return the Subsidies to the VEBA Trust, including crediting Plan participants with their appropriate share of the Subsidies, violates the terms of the Plan and ERISA;

(B)     Enjoin Defendants from all future violations of the Plan and ERISA with respect to the treatment of the Subsidies;

(C)     Order Defendants to restore all losses resulting from their violations of the Plan and ERISA;

(D)     Order Defendants to remedy all ERISA prohibited transactions they have

committed or in which they have knowingly participated;

(E)     Plaintiffs' costs and attorneys' fees; and

(F)     Such other relief as the Court shall deem necessary and proper.


Dated:  October 21, 2016                              Respectfully submitted,


/s/ Kevin L. Murphy
Kevin L. Murphy (#0021810)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Ft. Mitchell, KY 41017
859.578.3060 (p)
859.578.3061 (f)
kmurphy@mljfirm.com

*Trial Attorney for Plaintiffs*

Sarah M. Adams, *pro hac vice* application to
be submitted
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, DC 20006
202.857.0620 (p)
202.659.4503 (f)
sadams@groom.com

Edward A. Scallet, *pro hac vice* application
to be submitted
EASCOLAW PLLC
2756 Stephenson Lane NW
Washington, DC 20015
202.329.6399 (p)
ted@eascolaw.com

*Attorneys for Plaintiffs*


14